IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DIANA K. SMITH,

        Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

8:20CV176

**MEMORANDUM & ORDER**

This matter is before the Court on motions for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). Filing Nos. 17 and 20. The plaintiff, Diana K. Smith, appeals a final determination of the Commissioner denying her application for Social Security benefits. This Court has jurisdiction under 42 U.S.C. § 405(g).

### I. BACKGROUND

#### A. Procedural History

On July 10, 2017, plaintiff Smith at the age of forty-three, applied for disability benefits under Title II of the Social Security act; and for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Filing No. 1 at 1. Smith alleges a disability onset date of April 25, 2017. Filing No. 18 at 3. Smith must establish disability on or before the date she was last insured, March 31, 2021, in order to be entitled to benefits. *Id.*; *see* 42 U.S.C. § 216(i) and 223. Her application as denied initially and on reconsideration. *Id.* Smith requested and was granted a hearing before an administrative law judge ("ALJ") on June 20, 2019. Filing No. 1 at 2. After the hearing, the ALJ denied benefits on July 17, 2019. Filing No. 18 at 3. On March 2, 2020, the Appeals Council denied further review, and

the ALJ's decision stands as the final decision of the Commissioner. Filing No. 12, Ex. 2 at 2.

Smith challenges the ALJ's finding, arguing that the ALJ's decision is not supported by substantial evidence and relied upon an incomplete residual functional capacity ("RFC") in order to determine Smith could perform other work. Filing No. 1 at 2. Smith also argues that the ALJ erred in discounting the opinions of her treating physician and did not provide sufficient reasons for doing so.

### B. Hearing Testimony

Smith was born in 1974 and has past relevant work experience as a care giver, nursing student, phlebotomist, receptionist, and salesperson. Filing No. 12-6 at 17. At the hearing on June 20, 2019, Smith testified that she earned an associate degree in nursing in 2015. Filing No. 12-2 at 44. She further testified that she lives in Omaha, Nebraska, with her husband of twenty-one years and twenty-one-year-old son. *Id.* at 45. At the time of the hearing, Smith stated that her most recent job was as at Bimbo Bakeries in 2017, and she was unable to continue working because of a shoulder injury that occurred on the job. *Id.* at 49.

Smith states that her primary physical impairment is her right arm and shoulder injury. *Id.* Smith had to undergo shoulder surgery on August 21, 2017. Filing No. 13-2 at 132. Since the surgery, Smith has still had residual pain in her shoulder and arm. Filing No. 18 at 3. Smith testified that although she was released by her doctor to return to work, her arm had not improved to the point of functioning normally. Filing No. 12-2 at 50.

Smith testified that her mental health is the primary reason she filed for disability. *Id.* at 49. Smith stated that she has severe post-traumatic stress disorder ("PTSD") stemming from the 2016 death of her twin brother, where she performed CPR on him in her home. *Id.*

at 50. She stated that her brother was her best friend, and not only did she lose him, but as a nurse she felt like she lost a patient. *Id.* at 55. Smith performed CPR on her brother for thirty minutes before paramedics arrived and stated that she "felt every rib break underneath my hands. I heard his last breath and I watched his eyes roll in the back of his head, and that's something I can't get out of my mind. When I close my eyes at night it replays. And it's something…no matter how many meds they give me or how much I do medication or anything, I can't seem to get it out of my head." *Id.*

She went on to testify that along with the residual pain in her arm and PTSD, she also suffers from insomnia, anxiety, panic attacks, depression, and flashbacks. *Id.* When asked by the ALJ if she feels as though she has made progress in treatment over the past two years, Smith testified that despite going to different psychiatrists she still suffers from about two to three panic attacks per week that can last from a half an hour to an hour, she has trouble leaving the house and interacting with groups of people including her own family. *Id.* at 51-53. Smith stated that certain sights and smells will trigger a panic attack and make it difficult for her to run errands, let alone work. *Id.* at 52. Smith also indicated that, even with the help of her service animal, she finds it hard to go into stores because of her panic attacks and relies on her husband or son to pick up items for her. *Id.* at 51.

In terms of household activities, she testified that she was unable to do basic tasks around her home like cooking and cleaning. *Id.* at 54. Smith stated that she has not cooked in at least six months. *Id.* She also testified that she used to keep a clean house, but now she cannot do chores around the house like she used to. *Id.* Smith's personal grooming has also deteriorated, stating that there are times when she is unable to get out of bed or shower for days at a time. *Id.*, Filing No. 13-4 at 84.

3

A vocational expert also testified at the hearing. Filing No. 12-2 at 55. She was asked whether a worker with Smith's education and experience could find work if the hypothetical worker were limited to light exertion without the use of her right shoulder for more than occasional overhead reaching, and the hypothetical worker could occasionally lift or carry twenty pounds, frequently life or carry ten pounds, has no restriction in standing, sitting, or walking, and no other restrictions on arms or hands; no concentrated exposure to cold temperatures and hazards such as heights or dangerous equipment; could only follow routine tasks with social interaction not more than occasional with coworkers, supervisors and the public. *Id.* at 59. The vocational expert testified that there would be a work available that would be a mix of light and sedentary work as a photocopy machine operator, an office helper, or a document specialist. *Id.* at 60. Assuming a hypothetical worker with all the above limitations, and the additional limitation that he or she would have on average three panic attacks per week during which time they would be unscheduled and off task for up to thirty minutes, the vocational expert testified that the individual would not be able to sustain work activity with off-task behavior and unscheduled breaks because those would not be tolerated by employers on the schedule and at the lengths specified. *Id.* at 61. The expert testified that the Bureau of Labor Statistics indicates that employers will tolerate a maximum range of ten to twelve days absence from work. *Id.* at 62. Finally, when asked if there would be work for the same hypothetical worker with the above limitations and was additionally only able to leave their house for two to three hours one or twice per week, the vocational expert testified that there would be no full-time competitive work for such an individual. *Id.*

### C. Medical Evidence

Smith's medical records reflect that she has been diagnosed at various times with generalized anxiety disorder, major depressive disorder, PTSD, insomnia, residuals from

right shoulder surgery, migraines, and obesity. Filing No. 13-1 at 2, 7, 13, 19, 29. Smith has been treated by her primary treating physician, Srinivas Dannaram, M.D., since at least 2016. Filing No. 13-1 at 2.

Medical records show that pharmaceutical intervention for her anxiety, depression, PTSD, and insomnia were relatively unsuccessful. On November 15, 2016, Smith was prescribed Ativan and Clonazepam for anxiety, Trazodone to help with her insomnia, and Prozac for depression. Filing No. 13-1 at 6. On November 21, 2016, when those medications were not making a difference to her mood, she was prescribed Effexor XR for depression and taken off Prozac, and because her insomnia had not improved, she was taken off Trazodone and started Seroquel. *Id.* at 7. Smith's next visit with her primary care physician on December 8, 2016 resulted in an increased dosage of Clonazepam to help with her anxiety, and an increased dosage of Seroquel. *Id.* at 13. Smith was also started on Prazosin to help with her PTSD and nightmares. *Id.* On December 29, 2016, Smith again reported to her primary care physician that her negative thoughts, depressed mood, and inability to sleep did not change. *Id.* at 29. These symptoms were ongoing and did not improve during Smith's January 23, 2017 visit with her doctor, her January 27, 2017 visit, her January 31, 2017 visit, or her February 3, 2017 visit. *Id.* at 100, 102, 107, 115. On May 30, 2017, Smith saw Dr. Keller for primary care and discussed issues of lightheadedness, chest pains, and migraines. Filing No. 13-1 at 134-35. On June 5, 2017, Smith saw Dr. Keller again and was given a Ketorolac injection for her migraine. *Id.* at 136.

On April 27, 2017, Smith saw Dr. John McCarthy concerning her right arm issues following her work injury. Filing No. 13-2 at 111-112. Dr. McCarthy performed a Marcaine and Dep-Medrol injection on her first CMC joint and directed her to take anti-inflammatories and instructed her to do exercises and ice the area. *Id.* at 112. On May 2, 2017, Smith saw

5

Dr. McCarthy again for treatment concerning her right arm pain and was diagnosed with acromioclavicular arthrosis with tenosynovitis, status post right lateral epicondylar injection, stable, and status post radiocarpal injection right wrist. *Id.* at 114. Dr. McCarthy assigned temporary restrictions of limited work above shoulder level and a restriction to not life more than ten pounds with her right arm. *Id.* On August 21, 2017, Dr. McCarthy performed surgery on Smith's right shoulder. *Id.* at 132.

Smith has seen Mark Aksamit, a physician assistant-certified, for psychiatric treatment since August 8, 2016. Filing No. 13-3 at 81. On May 1, 2017, Aksamit has diagnosed Smith with PTSD, attention deficit hyperactivity disorder ("ADHD"), and a mood disorder. Filing No. 13-2 at 100. On her May 1, 2017 visit to Aksamit, Smith stated that she cried herself to sleep every night. *Id.* at 99. On December 11, 2017, Smith saw Aksamit again and told him that she bought a dog to help with her anxiety and explained that she struggled being around large groups of people or in new situations. Filing No. 13-3, at 120. Aksamit again noted that Smith continued to struggle with her PTSD and depressive symptoms and that created a significant amount of functional impairment in her day-to-day life. *Id.* at 121.

Smith has also seen a licensed mental health provider, April Blevins, since October 2015. Filing No. 13-4 at 84. Blevins diagnosed Smith with depression, anxiety, and PTSD. Filing No. 13-3 at 82. Blevins stated on December 19, 2017, that Smith utilizes her dog as a source of emotional support, which has assisted in alleviating some of her symptoms of depression and anxiety. *Id.* On May 20, 2019, Blevins stated that Smith's symptoms are debilitating to the point that they limit her daily living skills. Filing No. 13-4 at 84. Blevins writes that Smith tends to self-isolate and stay in bed for several days at a time, has felt suicidal, and has also used tattoos as a way of self-harming. *Id.* Prior to her brother's death,

6

Smith was working on taking her nursing test and obtaining employment, however, it is now impossible for Smith to work because she struggles to do the most basic tasks and complete her daily living skills such as eating and taking care of her hygiene. *Id.* Additionally, all of her symptoms are unable to be controlled by medication, making it even more unlikely that she can maintain employment. *Id.* Blevins notes that the trauma Smith experienced during her attempt to save her brother's life by performing CPR and watching her brother's death nearly caused Smith to kill herself and regress in her mental stability. *Id.* Smith also experiences nightmares and flashbacks of this experience, and therefore deals with constant trauma triggers surrounding her. *Id.*

### D. The ALJ's Findings

In evaluating Smith's claim, the ALJ followed the sequential evaluation process. Filing No. 12 at 19. The ALJ found Smith had not engaged in substantial gainful activity since April 25, 2017. *Id.* She found Smith had the following severe impairments: anxiety, bereavement/post-traumatic stress disorder, depressive disorder, residuals from right shoulder surgery, migraines, and obesity. *Id.*

The ALJ found that Smith's severe impairments did not meet or equal the listing of impairments that would render him presumptively disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), but determined Smith had the residual functional capacity ("RFC") to perform light work, with several additional environmental limitations.[1] *Id.* at 19-21. With that RFC, the ALJ found Smith could not perform his past relevant work, but could perform other light, unskilled work, such as a photocopy machine operator, an office

---

[1] The ALJ added the following limitations to Smith's capability to perform light work: she would be limited to light exertion without the use of her right shoulder for more than occasional overhead reaching, she would only be able to occasionally lift or carry up to twenty pounds, she would be precluded from concentrated exposure to cold temperatures and hazards such as heights or dangerous equipment; she would only be able to follow routine tasks with not more than occasional social interaction with coworkers, supervisors, and the public. Filing No. 12-2 at 21.

7

helper, or a document specialist. *Id.* at 30-31. Consequently, the ALJ found Smith was not disabled. *Id.* at 32.

The ALJ acknowledged that Smith's medically determinable impairments could have reasonably produced her symptoms, but nonetheless did not afford great weight to Smith's testimony because her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at 22. The ALJ only considered the opinions of Mark Aksamit who noted that Smith was "disabled", prescribed an emotional support animal, and indicated that the claimant's impairments were creating a significant amount of functional impairment in Smith's day to day life. *Id.* at 29. The ALJ stated that Aksamit's "opinions provided no function by function analysis, and they were vague and imprecise. Further, his treatment notes do not reflect limitations severe enough to warrant these findings. His opinions are not persuasive." *Id.*

The ALJ also gave "no consideration" to the opinions of April Blevins, stating that "[s]he is not an acceptable medical source and her opinions are not supported by her progress notes." *Id.* She further stated that "[t]here are no opinions from treating or examining physicians that indicate the claimant has significant functional limitations". *Id.* The ALJ concluded that the objective findings fail to show that Smith's symptoms are "as limiting as she has alleged." *Id.*

The ALJ relied heavily on the medical evidence of record, the claimant's activities of daily life, Smith's testimony, and SSR 16-3p. *Id.* at 21. She found that the evidence supports Smith's ability to perform light work, defined in 20 C.F.R. 404.1567(b) as the ability to lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk for six hours; and sit for six hours in a normal workday. *Id.*

The ALJ considered Smith's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App'x 2, in determining whether Smith could make a successful adjustment to other work. *Id.* at 30. She noted that if Smith had the RFC finding of "not disabled" would be directed by Medical-vocational Rules 202.21 and 202.14. Filing No. 12-2 at 31. Because Smith's abilities were impeded by the additional limitations the ALJ imposed, she relied on the vocational expert's testimony in finding that there were jobs in the national economy, such as a photocopy machine operator, that Smith could perform. *Id.*

## II. DISCUSSION

### A. Law

When reviewing a Social Security disability benefits decision, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court's review is limited to an inquiry into whether there is substantial evidence on the record to support the findings of the ALJ and whether the ALJ applied the correct legal standards. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011); *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). Substantial evidence "is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

However, this "review is more than a search of the record for evidence supporting the [ALJ or Commissioner's] findings," and "requires a scrutinizing analysis." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008). In determining whether there is substantial

evidence to support the Commissioner's decision, this court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

The Social Security Administration has promulgated a sequential process to determine whether a claimant qualifies for disability benefits. *See* 20 C.F.R. § 404.1520(a)(4). The determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity ("RFC") and his or her age, education and work experience. *Id.* At step one, the claimant has the burden to establish that he or she has not engaged in substantial gainful activity since his or her alleged disability onset date. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). At step two, the claimant has the burden to prove he or she has a medically determinable physical or mental impairment or combination of impairments that significantly limits his or her physical or mental ability to perform basic work activities. *Id.* At step three, if the claimant shows that his or her impairment meets or equals a presumptively disabling impairment listed in the regulations, he or she is automatically found disabled and is entitled to benefits. *Id.* If not, the ALJ determines the claimant's RFC, which the ALJ uses at steps four and five. 20 C.F.R. § 404.1520(a)(4). At step four, the claimant has the burden to prove he or she lacks the RFC to perform his or her past relevant work. *Cuthrell*, 702 F.3d at 1116. If the claimant can still do his or her past relevant work, he or she will be found not disabled; otherwise, at step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy the claimant can perform. *Id.*; *see Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010).

A claimant's RFC is what he or she can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014); 20 C.F.R. § 404.1545. The ALJ is required to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). An ALJ's RFC determination (1) must give appropriate consideration to all of a claimant's impairments; and (2) must be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016.).

In order to be supported by substantial evidence, an ALJ's RFC finding must be supported by a treating or examining source opinion. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *see also Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007). A claimant's RFC is a medical question and "'an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.'" *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008). "The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports.'" *Id.* (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)).

Under the regulations governing claims filed before March 27, 2017, if a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.[2]  *See* 20 C.F.R. § 404.1527(c)(2). If a treating

---

[2] The regulations have since been amended and reorganized—20 C.F.R. §§ 404.1527 and 416.927 have been superseded by 20 C.F.R. §§ 404.1520c and 416.920c for claims filed after March 27, 2017. *See Seay v. Berryhill*, No. 5:16-CV-05096-VLD, 2018 WL 1513683, at *39 (D.S.D. Mar. 27, 2018). However, 20 C.F.R. §§

11

physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. 20 C.F.R. § 404.1527(c)(2)-(6). Even if not entitled to controlling weight, a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). "When an ALJ discounts a treating [source's] opinion, he should give good reasons for doing so." *Davidson v. Astrue,* 501 F.3d 987, 990 (8th Cir. 2007).

In determining whether to fully credit a claimant's subjective complaints of disabling pain, the Commissioner engages in a two-step process: (1) first, the ALJ considers whether there are underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms; and (2) if so, the ALJ evaluates the claimant's description of the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to work. Soc. Sec. Rul. 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1020935(F.R.) (Mar. 16, 2016) (Policy Interpretation Titles II & XVI: Evaluation of Symptoms in Disability Claims). In the second step of the analysis, in recognition of the fact that "some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence[,]" an ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

---

404.1527 and 416.927 still apply to this case, which was filed before the effective date of the new regulations. *Id.*

medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*, 81 Fed. Reg. at *14168. To determine the intensity, persistence, and intensity of an individual's symptoms, the ALJ evaluates objective medical evidence, but will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled. *Id.* However, the ALJ must not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at *14169.

If an ALJ cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then he must carefully consider other evidence in the record—including statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in the Social Security regulations—in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. *Id.* Those factors include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *14169-70.

Social Security Ruling 16-3p also provides:

> We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities for an adult or the ability to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim. Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.

*Id.* at *14170. "[The Eighth Circuit Court of Appeals] has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning, or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (quoting *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000)). Allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications. *Id.* Similarly, a failure to follow a recommended course of treatment also weighs against a claimant's credibility. *Id.*

In the fourth step of the sequential analysis, the ALJ considers whether a claimant's impairments keep her from doing past relevant work. 20 C.F.R. §404.1520(e). A claimant's RFC is the most that one can do despite his/her limitations. 20 C.F.R. § 404.1545. The claimant is not disabled if the claimant retains the RFC to perform: "1) the actual functional demands and job duties of a particular past relevant job; or 2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996). During this step, an ALJ may consider the vocational expert's testimony when determining the claimant's RFC. *Wagner v. Astrue*, 499 F.3d 842, 853-54 (8th Cir. 2007). The ALJ often asks the vocational expert a hypothetical question to help determine whether a sufficient number of jobs exist in the

national economy that can be performed by a person with a similar RFC to the claimant. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005).

A hypothetical question posed to a vocational expert as part of the RFC determination must be properly phrased to include all relevant impairments that are substantially supported by the record as a whole. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). If the hypothetical question does not include all relevant impartments the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's determination. *Id.*

This court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations but [does] not require an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). An ALJ is not required to discuss all the evidence in the record to show that it was properly considered. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). "Simply because a matter is not referenced in the opinion does not mean the ALJ failed to rely on the evidence in making his determination. However, this does not give an ALJ the opportunity to pick and choose only evidence in the record buttressing his conclusion." *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004). An ALJ "must minimally articulate his reasons for crediting or rejecting evidence of disability." *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992)).

The ALJ must give "controlling weight" to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Papesh*, 786 F.3d at 1132. Even if not entitled to controlling weight, a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. *Id.* The regulatory framework requires the ALJ to evaluate a treating source's opinion in consideration of factors such as length of

treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and specialization of the treating source. *Id.*; *see* 20 C.F.R. 404.1527(c)(2). "When an ALJ discounts a treating [source's] opinion, he should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007); *Jenkins v. Apfel*, 196 F.3d 922, 924-925 (8th Cir. 1999) (stating the ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions).

When assessing the credibility of a claimant's subjective allegations, the ALJ must consider the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Tate v. Apfel*, 167 F.3d 1191, 1197 (8th Cir. 1999) (applying analysis mandated by *Polaski v. Heckler*, 739 F.2d 1120, 1322 (8th Cir. 1984), to seizure complaints). "An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole." *Jackson v. Apfel*, 162 F.3d 533, 538 (8th Cir. 1998) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)). A claimant may have disabling pain and still be able to perform some daily home activities. *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998) ("the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."); *see also Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005).

### B. Analysis

The Court has carefully reviewed the record and finds that the ALJ's denial of benefits should be reversed. In this case, the ALJ improperly discounted the claimant's subjective complaints where they were inconsistent with her daily functioning and objective medical

findings. The ALJ did not properly assess the weight of the treating physician, physician assistant-certified, or licensed mental health provider's opinions, and instead, asserted her own medically unsupported findings.

The ALJ opined that the lack of objective medical finding within the treatment notes of Smith's mental health providers with the ALJ's observation of the claimant and her testimony left her without basis for the claimed disability. The ALJ then fashioned an RFC inconsistent with the treating physician and mental health providers. The medical record, the treating physician, the physician assistant, and the licensed mental health provider supplied the medical evidence necessary for the ALJ to determine whether the claimant is disabled.

The ALJ noted inconsistencies in the medical record and the claimant's testimony to undermine the credibility of the claimant, and the treating physicians and providers. However, the ALJ cited little evidence from the record supporting the claimant's condition, including the claimant's testimony of her subjective complaints of pain, limited physical movement and her inability to perform day to day tasks based on her mental health issues. The ALJ discounted the credibility of the treating physician and, in part, the credibility of the physician's assistant and licensed mental health care provider because the claimant is able to do some daily activities like helping her husband take care of the bills, prepare simple meals, make the bed, and fold laundry. Additionally, the ALJ notes that the claimant does not have problems with memory, concentration, and focusing when performing a task. The claimant's ability to consistently work or perform the work activities decided by the ALJ were not supported by either the treating physicians or either of Smith's mental health providers, the medical record, nor the claimant's supposed inconsistent testimony.

The ALJ must account for the limited physical mental ability to carry on with her daily chores and normal socialization. Smith has had several medical and pharmaceutical interventions including changing of medications, changing of dosages, and numerous counseling and therapy sessions with mental health providers since 2015. Smith always noted very little change in her anxiety, depression, PTSD, and insomnia symptoms as a result of the attempted treatment. Additionally, she has had pain management shots, as well as surgery on her right shoulder, which only provided pain relief temporarily and resulted in more residual pain. Considering the treating physician and the consulting mental health care providers' opinions, the Court finds that her disabilities include anxiety, depression, PTSD, insomnia, panic attacks, flashbacks, residuals from right shoulder surgery, migraines, obesity, and that these disabilities are severe impairments. These limitations speak to her status as disabled. Under the circumstances, the Court finds substantial evidence in the record is inconsistent with the ALJ's findings, and the ALJ's decision should be reversed.

## III. CONCLUSION

The clear weight of the evidence points to a conclusion that Smith has been disabled since her claimed onset date of April 25, 2017. Reversal and remand for an immediate award of benefits is only appropriate where the record overwhelmingly supports a finding of disability, the Court finds that "the clear weight of the evidence fully supports a determination [Smith] is disabled within the meaning of the Social Security Act." See *Pate-Fires v. Astrue,* 564 F.3d 935, 947 (8th Cir. 2009). More importantly, the Eighth Circuit has repeatedly approved of immediately awarding benefits based upon the controlling weight of a claimant's treating medical provider. See*, id.; Shontos v. Barnhart,* 328 F.3d 418, 427 (8th Cir. 2003); *Cunningham v. Apfel,* 222 F.3d 496, 503 (8th Cir. 2000).; *Singh v. Apfel,* 222 F.3d 448, 453 (8th Cir. 2000); *cf. Papesh v. Colvin,* 786 F.3d 1126, 1135-36 (8th Cir. 2015). And where

18

further hearings would merely delay receipt of benefits, an order granting benefits is appropriate. *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001).

Accordingly,

IT IS ORDERED THAT:

1. The plaintiff's motion to reverse, Filing No. 17, is granted;

2. The Commissioner's motion to extend the time to file a supporting brief, Filing No. 19, is denied as moot;

3. The defendant's motion to affirm, Filing No. 20, is denied;

4. The decision of the Commissioner of the Social Security Administration is reversed;

5. This action is remanded to the Social Security Administration for an award of benefits; and

6. A separate judgment will be entered in accordance with this memorandum and order.

Dated this 29th day of April, 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge